UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TONY HENDRIX,<br><br>                    Petitioner,<br><br>        v.<br><br>PAROLE OFFICER ROWLAND J.<br>SIAISIAI and CDCR SECRETARY<br>KATHLEEN ALLISON,<br><br>                    Respondents. | Case No. 20-cv-04365-JST<br><br>**ORDER DENYING PETITION FOR A<br>WRIT OF HABEAS CORPUS;<br>DENYING CERTIFICATE OF<br>APPEALABILITY** |

Before the Court is the above-titled petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2254 by petitioner Tony Hendrix, challenging the validity of his state court conviction. ECF No. 1. Respondents have filed an answer to the petition.[1] ECF Nos. 19, 20. Petitioner has not filed a traverse, and the deadline to do so has since passed. For the reasons set forth below, the petition is DENIED.

## I. PROCEDURAL HISTORY

On February 3, 2017, a Contra Costa County jury found Petitioner guilty of assault with a firearm on a peace officer (Cal. Pen. Code § 245(d)(1)) and exhibiting a firearm in the presence of an officer (Cal. Pen. Code § 417(c)). The jury also found true a firearm enhancement allegation (Cal. Pen. Code § 12022.53(b)). On February 24, 2017, Petitioner was sentenced to an aggregate term of 14 years. ECF No. 1 ("Pet.") at 2.

---

[1] In accordance with Habeas Rule 2(a) and Rule 25(d)(1) of the Federal Rules of Civil Procedure, the Clerk of the Court is directed to substitute Parole Officer Rowland J. Siaisiai and CDCR Secretary Kathleen Allison as respondents in place of David O. Livingstone because they are Petitioner's current custodians. *See Ortiz-Sandoval v. Gomez*, 81 F.3d 891, 894 (9th Cir. 1996); Rule 2(b) of the Rules Governing § 2254 Cases in the United States District Court.

United States District Court<br>Northern District of California

On May 4, 2017, Petitioner filed a petition for habeas corpus in the California Court of Appeal. ECF No. 20-5. On May 17, 2017, the California Court of Appeal denied this petition. *Id.* Petitioner subsequently filed a direct appeal. ECF No. 20-6. On August 3, 2018, the California Court of Appeal affirmed the judgment in an unpublished opinion, but remanded for resentencing. *People v. Hendrix*, C No. A150770, 2018 WL 3689431 at *1–*3 (Cal. Ct. App. Aug. 3, 2018). On August 9, 2018, Petitioner filed a petition for review in the California Supreme Court, which was denied on October 10, 2018. ECF Nos. 20-10 and 20-11. In December 2018, following remand, Petitioner appealed the trial court's resentencing order. The California Court of Appeal allowed the appeal and remanded for another resentencing in August 2019. ECF No. 20-12.

On October 17, 2019, Petitioner filed a state habeas petition in the Contra Costa County Superior Court, which was denied on December 20, 2019. ECF No. 20-13. On March 12, 2020, Petitioner filed a petition for habeas corpus in the California Court of Appeal, which was denied on March 27, 2020. ECF No. 20-14. On April 9, 2020, Petitioner filed a petition for review from the March 27, 2020 denial, which the California Supreme Court denied on May 13, 2020. ECF Nos. 20-15 and 20-16.

On June 19, 2020, at Petitioner's new resentencing hearing, the trial court struck the firearm enhancement, reduced Petitioner's sentence to six years for the assault with a firearm conviction, stayed the two-year term for the conviction for exhibiting a firearm in the presence of an officer, and released Petitioner on parole. ECF No. 20-17. Petitioner did not appeal this resentencing.

On or about May 25, 2020,[2] Petitioner filed the instant petition, which was docketed by the Court on June 25, 2020. Pet. at 6.

On September 9, 2020, the Court found that the petition stated the following cognizable claims: (1) actual innocence; (2) ineffective assistance of trial counsel; and (3) the trial court erred

---

[2] The Court affords Petitioner application of the mailbox rule as to the filing of his habeas petition. *Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (*pro se* prisoner filing is dated from the date prisoner delivers it to prison authorities). It appears that Petitioner gave his petition to prison authorities for mailing on or about May 25, 2020. Pet. at 6.

United States District Court
Northern District of California

1    with respect to the public's access to the courtroom during the trial.  ECF No. 10 at 2.

2

## II.  FACTUAL BACKGROUND

3       The following factual and procedural background is taken from the California Court of

4   Appeal's August 10, 2018 opinion:[3]

5

### A. The Prosecution Evidence

6       On June 28, 2016 at 2:30 a.m., appellant's wife, Daphine Hendrix
(Daphine), called 911 for assistance, reporting that she had an
7       argument with her husband and was locked out of her home.  She
advised the operator that appellant had a gun earlier in the day, but
8       she did not know where it was at that time.  Antioch Police Officer
Kris Kint was dispatched to the scene.  Officer Marty Hynes was
9       also sent to appellant's home to act as a "cover" officer for Kint.
This was standard procedure "[b]ecause there's a high likelihood of
10      potential problems occurring" when police respond to domestic
disturbance calls.

11

12      The officers parked their vehicles away from the scene and
proceeded on foot where they contacted Daphine, who was waiting
13      outside.  Daphine told the officers that she and appellant were
having marital problems because she suspected he was having an
14      affair, and that she had packed her bags and planned to move out.
That night, appellant had come home drunk, the two argued, and
15      appellant had locked her out of their apartment.  Daphine reported
that appellant threw her bags around, but he did not physically
16      assault her.  Kint inquired whether Daphine could stay someplace
else that night, but she did not want to leave.  She wanted to get
17      back in her apartment.

18      Kint knocked on the front door of appellant's apartment, and
identified himself as a police officer, but received no response.  Kint
19      also knocked on a bedroom window and backyard window, called
out appellant's name, and repeated that he was an officer, but
20      appellant did not respond.  Hynes also knocked on a backyard
window, to no avail.  Kint arranged for dispatch to place a phone
21      call to the home, but there was no answer.  Daphine suggested that
appellant was hiding from them.  She wanted the officers to help her
22      get inside and either remove appellant or escort her while she
gathered some of her belongings.  The officers told Daphine they
23      could not break into her home.  Kint encouraged her to leave, but
she would not.

24      Daphine went back up to the house to try get in through the front
door or window.  Kint was watching from the walkway, and Hynes
25      was taking cover behind a truck on the street.  Then, appellant

26

27   [3] The Court has independently reviewed the record as required by AEDPA.  *Nasby v. Daniel*, 853
F.3d 1049, 1052–54 (9th Cir. 2017).  Based on the Court's independent review, the Court finds
28   that it can reasonably conclude that the state court's summary of the prosecution case and the
defense case is supported by the record, unless otherwise indicated in this order.

United States District Court
Northern District of California

"barge[d]" out of the apartment, yelling and screaming. Appellant and Daphine were arguing "intently," and although Kint could not hear their words, he believed the dispute was about to get physical.

Kint decided he needed to separate the couple to prevent a physical fight. As Kint approached them, however, he noticed that appellant was holding a gun. Appellant was screaming and waiving the gun around in an angry fashion. Kint yelled out to appellant. At trial, he could not recall whether he yelled "police" or "drop the gun," or both. Appellant did not make a verbal response, but shifted his attention to Kint and began to advance with his gun pointed at the officer. Then Kint drew his weapon, moved so he was not a stationary target, and fired five or six shots. Appellant fell to the ground on his stomach and laid motionless with the gun by his right hand.

Meanwhile, Daphine was moving back toward the street, where Officer Hynes pulled her behind the truck, drew his gun and pointed it toward appellant. Then he called for medical assistance and backup. Several officers arrived almost immediately.

**B. The Defense Case**

The defense offered the jury a materially different version of the pertinent events. Daphine and appellant both testified that on the day before the shooting incident, they had a disagreement about appellant's drinking, an issue that had plagued their marriage. Daphine told appellant that she was going to leave him, but neither of them was angry about this revelation. Throughout the rest of the day and night, appellant had a lot to drink. Shortly before he went home that night or early the next morning, an unknown assailant shot up appellant's Range Rover, which was an upsetting experience for appellant.

Daphine testified that appellant arrived home at around 2:00 a.m., very drunk. He walked straight to the bedroom without saying anything. Daphine stayed in the living room, but heard some things being pushed to the ground. At that point, Daphine decided to go outside and smoke some cigarettes, leaving the front door wide open. At around 2:30 a.m., she realized she was locked out of the house. Since the house phone was in the pocket of her house coat, Daphine called the police to help her get back inside.

Daphine testified that when the officers arrived, she told them she had been locked out of the house. They asked if she had been abused or assaulted, she said she had not, and then they told her they could not "do anything unless a crime has been committed." But she questioned if she was just going to be left outside her home at 2:00 a.m. So, they proceeded as a group to the bedroom window because her initial thought was that appellant was asleep in there. They "tapped" on the window and one officer said "Antioch PD." Then they moved to the living room window, where they saw appellant get up out of a recliner. At that point, one officer took Daphine to stand behind a truck on the street, while the other officer went and stood on the neighbor's porch. Within a few seconds, appellant came outside. Daphine could not see him from where she

was standing with one officer, but she heard him say "What the F y'all doing at my house?"  Then the officer who was on the neighbor's porch yelled that appellant had a gun and began firing shots.

In contrast to testimony elicited during the prosecution case, Daphine testified that the officers never went to her front door prior to the shooting; they did not knock on that door or the window by that door.  Nor did Daphine ever go to the front door after the officers arrived.  Contrary to Officer Kint's testimony that the couple argued when appellant came out of the house, Daphine testified that she was standing by a truck on the street when appellant came out of their house, and she did not actually see appellant until he fell to the ground after the officer shot him.  And according to Daphine, the other officer, who was standing with her, never drew his weapon.

Under cross-examination, Daphine testified that she did not argue or fight with appellant when he arrived home at 2:00 a.m. on the morning of the shooting.  She also testified that appellant was not aggressive toward her and she was not afraid of him, and she reiterated that the reason she called 911 was because she was locked out of her home.  Following this testimony, a recording of Daphine's 911 call was played for the jury.  During the call, Daphine reported that appellant was trying to "jump" her, and that she was not hurt but she had run out of the house and was hiding in the backyard.  Daphine testified that she recognized her voice on the 911 recording but she denied making these statements to the 911 operator.

Appellant testified that when he arrived home early in the morning on June 28, 2016, he just wanted to go to bed, having had a long day and a lot to drink.  He went to the bedroom to "pass out," but piles of Daphine's things were on the bed, so he swiped them to the ground.  His actions may have scared Daphine, but he just laid down.  Then appellant heard Daphine leave the apartment.  Things were "spinning," so he got up and went to the living room, found that the front door was wide open and closed it.  Appellant closed the door because he was still anxious and concerned about the fact that somebody had shot at his car earlier that day.  Then he must have decided to sit down in the recliner, so he could be near the door to let Daphine in when she returned.  The next thing he knew, there was rattling on his windows.  And there was "banging" on his house, coming from all around.

Appellant testified that he used a forceful voice, his military voice, to ask who was outside his home, but there was no response.  He was still thinking about the fact that somebody had shot at his car, so he went and got his gun out of the bedroom.  Appellant was cognizant of the fact that his gun was jammed because it had not been properly serviced, but he carried it at his side, as "a threat just in case someone out there didn't have a gun."  [FN 2]

> FN 2: Appellant testified that he knew "a lot about how guns operate" from his experience serving in the military.  A few months before the incident, he purchased his gun from a homeless friend, but he had been "lazy and had not serviced

5

it." Consequently, when he tested it a few weeks before the incident, it jammed. After that happened, appellant did not do anything to fix or repair the weapon.

Appellant testified that he opened his front door and looked out, but nobody was there. Then he took five or six steps outside, and noticed for the first time, that Officer Kint was off to his right. Kint got on his radio, announced that appellant had a gun, and immediately fired shots at appellant without any warning. After appellant was hit with a second shot, he laid face down because he feared the officer was going to kill him. He remained face down and played dead as he heard other officers surround him.

*Hendrix*, 2018 WL 3689431 at *1-*3.

## III. DISCUSSION

### A.   Standard of Review

A petition for a writ of habeas corpus is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). This Court may entertain a petition for a writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state courts' adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). Additionally, habeas relief is warranted only if the constitutional error at issue "had substantial and injurious effect or influence in determining the jury's verdict." *Penry v. Johnson*, 532 U.S. 782, 795 (2001).

A state court decision is "contrary to" clearly established Supreme Court precedent if it "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." *Williams*, 529 U.S. at

6

405–06.  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  *Id.* at 411.

Section 2254(d)(1) restricts the source of clearly established law to the Supreme Court's jurisprudence.  "[C]learly established Federal law, as determined by the Supreme Court of the United States" refers to "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from [the Supreme Court] is, at best, ambiguous."  *Mitchell v. Esparza*, 540 U.S. 12, 17 (2003).

The state court decision to which Section 2254(d) applies is the "last reasoned decision" of the state court.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991);[4] *Barker v. Fleming*, 423 F.3d 1085, 1091–92 (9th Cir. 2005).  Here, the last reasoned decision to address the claims raised herein is the Contra Costa County Superior Court's December 20, 2019 order denying the petition of writ of habeas corpus.  ECF No. 20-13.

**B.      Petitioner's Claims**

Petitioner alleges that (1) he is actually innocent of assault on a police officer; (2) trial counsel was ineffective; and (3) the trial court erred when it prohibited the public from attending his trial.  Petitioner raised these claims for the first time in the habeas petition he filed with Contra Costa County Superior Court in or about 2019.  ECF No. 20-13.  The Contra Costa County

---

[4] Although *Ylst* was a procedural default case, the "look through" rule announced there has been extended beyond the context of procedural default.  *Barker v. Fleming*, 423 F.3d 1085, 1091 n.3 (9th Cir. 2005).  The look through rule continues as the Ninth Circuit held that "it is a common practice of the federal courts to examine the last reasoned state decision to determine whether a state-court decision is 'contrary to' or 'an unreasonable application of' clearly established federal law" and "it [is] unlikely that the Supreme Court intended to disrupt this practice without making its intention clear."  *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *amended*, 733 F.3d 794 (9th Cir. 2013).

United States District Court
Northern District of California

1    Superior Court denied these claims in a reasoned order.  ECF No. 20-13.  The California Court of

2    Appeals and the California Supreme Court subsequently summarily denied these claims.  Answer,

3    ECF Nos. 20-14, 20-15, and 20-16.

4        **1.      Actual Innocence**

5        Petitioner alleges that there is evidence that he did not commit assault on a police officer

6    (Cal. Penal Code § 245(d)(1)).  He alleges that his home security camera "certainly would have"

7    recorded exonerating footage of the relevant events and proved that there was no assault, but that

8    Antioch Police Department officers illegally entered his home, seized the recorded footage and the

9    computer that maintained the footage, and destroyed this footage.  Petitioner alleges that a

10   neighbor observed the police officers entering and ransacking his home on the morning of June

11   28, 2016.  ECF No. 1 at 7.  Respondents argue that Petitioner's actual innocence claim is not

12   cognizable on federal habeas review, is procedurally defaulted because it was denied on

13   procedural grounds, and because the state court's decision was neither contrary to, nor an

14   unreasonable application of, clearly established Supreme Court law.  ECF No. 19-1 at 13-19.

15       The Court DENIES federal habeas relief on this claim because it is unexhausted and not

16   cognizable on federal habeas.

17       **a.      Failure to Exhaust**

18       Prisoners in state custody who wish to challenge collaterally in federal habeas proceedings

19   either the fact or length of their confinement are required first to exhaust state judicial remedies,

20   either on direct appeal or through collateral proceedings, by presenting the highest state court

21   available with a fair opportunity to rule on the merits of each and every claim they seek to raise in

22   federal court.  *See* 28 U.S.C. § 2254(b), (c).  The state's highest court must "be alerted to the fact

23   that the prisoners are asserting claims under the United States Constitution," *Duncan v. Henry*,

24   513 U.S. 364, 368 (1995), and must be given an opportunity to rule on the claims even if review is

25   discretionary, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) (petitioner must invoke "one

26   complete round of the State's established appellate review process.").  Habeas relief may not be

27   granted on an unexhausted claim, but a court may deny an unexhausted claim on the merits.  *See*

28   28 U.S.C. § 2254(b), (c).

1    To exhaust a claim in state court, the petitioner must present to the state court both the

2    factual basis for the claim and the constitutional claim inherent in those facts. *Gray v. Netherland*,

3    518 U.S. 152, 162–63 (1996) ("In *Picard v. Connor*, 404 U.S. 270 (1971), we held that, for

4    purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference

5    to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the

6    petitioner to relief."). To exhaust the factual basis for the claim, "the petitioner must only provide

7    the state court with the operative facts, that is, 'all of the facts necessary to give application to the

8    constitutional principle upon which [the petitioner] relies.'" *Davis v. Silva*, 511 F.3d 1005, 1009

9    (9th Cir. 2008) (alteration in original) (citation omitted).

10    The actual innocence claim raised in this petition is distinct from the actual innocence

11    claim raised in state court because they rely on different sets of underlying facts. The actual

12    innocence claim raised in state court alleges that, in 2017 and 2018, after Petitioner was convicted,

13    Daphine was approached by neighbors James Vreonis Jr. and Willie Sheperd who told Daphine

14    that they saw Officer Kint attempt to kill Petitioner without cause. Specifically, Sheperd told her

15    that he never heard the police announce themselves or direct Petitioner to drop the weapon, and

16    Vreonis Jr. told Daphine that he saw the whole shooting and had it on videotape. Sheperd and

17    Vreonis Jr. did not come forward earlier because they were afraid that police officers would

18    retaliate against them.[5] ECF No. 20-15 at 15-16. The facts underlying the actual innocence claim

19    raised in state court are what Vreonis and Sheperd allegedly told Daphine. In contrast, the facts

20    underlying the actual innocence claim raised here are the existence of allegedly exculpatory

21    security camera footage and the destruction of this evidence by Antioch police officers.[6] Because

22    the actual innocence claim raised here arises out of a different set of facts that the actual innocence

23    claim raised in state court, Petitioner has not exhausted this actual innocence claim. The Court

24    _____

25    [5] Daphine's unsworn declaration regarding these statements were not filed in the record by either
Petitioner or Respondent. The Court relies on Petitioner's description of the declaration, as set

26    forth in his April 2020 petition for review of the state appellate court's denial of his habeas
petition. ECF No. 20-15.

27    [6] This claim is contradicted by the record. During trial, Daphine Hendrix testified that ADT had
informed her that the cameras were not working during the relevant time period, and Daphine also

28    testified that the cameras had been unplugged prior to the relevant events. Answer, Ex. 2 ("RT")
at 311-12.

United States District Court
Northern District of California

1    may not grant relief on this unexhausted claim.  28 U.S.C. § 2254(b).

2            **b.      Actual Innocence Claim Not Cognizable in Federal Habeas**

3            Even if this claim were exhausted, Petitioner is not entitled to federal habeas relief on this

4    claim.  The denial of a freestanding claim of actual innocence is neither contrary to, nor an

5    unreasonable application of, clearly established Federal law because there is no clearly established

6    Federal law recognizing actual innocence as a cognizable federal habeas claim.  In 1993, the

7    Supreme Court noted that "[c]laims of actual innocence based on newly discovered evidence have

8    never been held to state a ground for federal habeas relief absent an independent constitutional

9    violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S.

10   390, 400, (1993).  In subsequent cases, the Supreme Court explained that *Herrera* left open the

11   question of "whether a prisoner may be entitled to habeas relief based on a freestanding claim of

12   actual innocence," *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (holding that actual innocence

13   claim may, under certain conditions, allow court to consider untimely habeas petition); *House v.*

14   *Bell*, 547 U.S. 518, 554-55 (2006), and declined to resolve this question, *see Taylor v. Beard*, 811

15   F.3d 326, 334 (9th Cir. 2016) ("It is still an open question as to whether a petitioner 'may be

16   entitled to habeas relief based on a freestanding claim of actual innocence.'") (citing to

17   *McQuiggin*, 569 U.S. at 392).  "If no Supreme Court precedent creates clearly established federal

18   law relating to the legal issue the habeas petitioner raised in state court, the state court's decision

19   cannot be contrary to or an unreasonable application of clearly established federal law."  *See*

20   *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004); *see also Wright v. Van Patten*, 552 U.S. 120

21   (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the

22   petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly

23   established Federal law.") (internal quotation marks omitted)); *Carey v. Musladin*, 549 U.S. 70, 77

24   (2006) ("Given the lack of holdings from this Court regarding" the claim, "it cannot be said that

25   the state court 'unreasonably appli[ed] clearly established Federal law.'" (alterations in original)).

26           **2.      Ineffective Assistance of Counsel**

27           Plaintiff alleges that trial counsel was ineffective because trial counsel: (1) failed to

28   conduct a reasonable pretrial investigation in that he failed to interview and subpoena witnesses

United States District Court
Northern District of California

and failed to hire a ballistics or forensics expert to investigate the scene of the alleged crime;
(2) failed to present at trial a favorable medical report confirming that Petitioner was shot from the
right side; (3) failed to file a motion to suppress statements obtained during the *Miranda* phrase of
an interrogation and obtained right after Petitioner had major surgery and was under the influence
of various painkillers; and (4) failed to call as a witness a ballistic or forensics expert whose
testimony could have challenged Officer Kint's testimony regarding where Kint was during the
shooting and why Kint shot Petitioner.  ECF No. 1 at 8-9.  Respondents argue that this claim is
procedurally defaulted and that, in the alternative, the state court reasonably concluded that
counsel was not ineffective.  ECF No. 19-1 at 19-25.

The state superior court denied this claim as follows:

> Petitioner alleges ineffective assistance of counsel.  There are two
> essential requirements for such a claim.  The petition must allege
> specific facts showing (1) that defense counsel's representation fell
> below an objective standard of reasonableness and (2) that but for
> counsel's unprofessional errors, the result of the proceeding would
> have been different.  (*Strickland v. Washington* (1984) 466 U.S.
> 668.)  As is required for any claim raised in a habeas corpus petition,
> the petition must allege specific facts showing the deficient
> performance of counsel and resulting prejudice, and that showing
> must satisfy both prongs of the Strickland test.  (*In re Resendiz*
> (2001) 24 Cal. 4th 230, 239.)  A petition that does not meet these
> requirements may be summarily denied.
>
> Here, Petitioner provides no competent evidence showing the ways
> his trial counsel was allegedly ineffective, nor does he show any
> evidence of prejudice, and therefore, the petition would normally be
> denied on these grounds.
>
> . . . .
>
> However, the court is precluded from considering Petitioner's
> ineffective assistance of counsel claim . . . because he could have
> presented [this] claim[] in his direct appeal, but failed to do so.
>
> Petitioner alleges ineffective assistance of counsel on the following
> grounds:  (1) he claims his trial attorney did not conduct a
> reasonable pretrial investigation; [FN 8] (2) he asserts his trial
> attorney did not present a favorable medical report to support
> Petitioner's defense; (3) he asserts that his trial attorney did not file
> a motion to suppress his statement on *Miranda* grounds; and (4) he
> contends that his trial attorney did not call a ballistics expert or a
> forensic expert.
>
> > FN 8:  The court treats Petitioner's claim that he spoke with
> > his trial attorney prior to trial about witnesses Willie Sheperd

and James Vreonis, Jr., as part of the overall claim of failure to conduct a reasonable pretrial investigation.

In the unpublished appellate opinion filed on August 3, 2018 in case A150770, the court of appeal addressed an ineffective assistance of counsel claim that was raised on Petitioner's direct appeal. Specifically, Petitioner had argued on appeal that his trial counsel was ineffective for failing to object to certain portions of the testimony of two law enforcement officers at trial, Officer Hynes and Detective Vanderpool. (*People v. Hendrix*, 2019 Cal. App. Unpub. LEXIS 5867, *9-10.) Petitioner also asserted on appeal that there was no tactical reason for his trial counsel's failure to object to portions of this witness testimony. (*Id.*) The court of appeal rejected both of these claims of ineffective representation, writing that ". . . there were sound reasons not to object to the two specific items of evidence [Petitioner] complains about on appeal. Therefore, he has failed to demonstrate that he was denied the effective of counsel at trial." (*People v. Hendrix*, 2019 Cal. App. Unpub. LEXIS 5867, *19-20.)

The Court of Appeal considered and rejected two specific claims of ineffective assistance of counsel that Petitioner raised in his direct appeal. Neither of these claims included any of the four grounds of asserted ineffective representation Petitioner now presents in this petition. Accordingly, this court draws the inference that Petitioner did not raise any of the four bases that he now asserts in this writ petition as part of the ineffective assistance of counsel claims he raised in his direct appeal.

. . . .

It is well settled that petitions for habeas corpus are not permitted where the issues could have been raised on appeal, or had been raised and were denied. (*In re Harris* (1993) 5 Ca1.4th 813, 829; *In re Waltreus* (1965) 62 Cal.2d 218, 225; *In re Dixon* (1953) 41 Cal.2d 756, 759.) "Habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors *could have been, but were not*, raised upon a timely appeal from a judgment." (*In re Harris*, *supra*, 5 Cal.4th at p. 829 (quoting *In re Dixon*, *supra*, 41 Cal.2d at p. 759) (emphasis in original).) However, petitioners may "raise in a petition for writ of habeas corpus an issue previously rejected on appeal where there has been a change of law affecting the petitioner." (*Id.* at p. 841.)

ECF No. 20-13 at 11-13.

###### a.    Legal Standard

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court held that ineffective assistance of counsel is cognizable as a denial of the Sixth Amendment right to counsel, which guarantees not only assistance, but effective assistance, of counsel. *Id.* at 686. The *Strickland* framework for analyzing ineffective assistance of counsel claims is considered to be "clearly

1    established Federal law, as determined by the Supreme Court of the United States" for the

2    purposes of Section 2254(d) analysis. *Daire v. Lattimore*, 812 F.3d 766, 767–68 (9th Cir. 2016);

3    *see also Cullen v. Pinholster*, 563 U.S. 170, 189 (2011).

4            To prevail on an ineffective assistance of counsel claim, a petitioner must establish two

5    things. First, he must establish that counsel's performance was deficient, i.e., that it fell below an

6    "objective standard of reasonableness" under prevailing professional norms. *Id.* at 687–88. This

7    requires showing that counsel made errors so serious that counsel was not functioning as the

8    "counsel" guaranteed by the Sixth Amendment. *Id.* at 687. The relevant inquiry is not what

9    defense counsel could have done, but rather whether the choices made by defense counsel were

10   reasonable. *See Babbitt v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1998). Judicial scrutiny of

11   counsel's performance must be highly deferential, and a court must indulge a strong presumption

12   that counsel's conduct falls within the wide range of reasonable professional assistance. *See*

13   *Strickland*, 466 U.S. at 689.

14           Second, he must establish that he was prejudiced by counsel's deficient performance, i.e.,

15   that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

16   proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a

17   probability sufficient to undermine confidence in the outcome. *Id.* Ultimately, a petitioner must

18   overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable

19   professional assistance" and "might be considered sound trial strategy" under the circumstances.

20   *Id.* at 689 (internal quotation marks omitted). A federal habeas court considering an ineffective

21   assistance of counsel claim need not address the prejudice prong of the *Strickland* test "if the

22   petitioner cannot even establish incompetence under the first prong." *Siripongs v. Calderon*, 133

23   F.3d 732, 737 (9th Cir. 1998). Conversely, the court "need not determine whether counsel's

24   performance was deficient before examining the prejudice suffered by the defendant as a result of

25   the alleged deficiencies." *Strickland*, 466 U.S. at 697.

26           A "doubly" deferential standard of review is appropriate in analyzing ineffective assistance

27   of counsel claims under AEDPA because "[t]he standards created by *Strickland* and § 2254(d) are

28   both highly deferential." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) (internal quotation marks

United States District Court
Northern District of California

1    omitted); *see also Cullen*, 563 U.S at 190; *Premo v. Moore*, 562 U.S. 115, 122 (2011).  The

2    general rule of *Strickland*, i.e., to review a defense counsel's effectiveness with great deference,

3    gives the state courts greater leeway in reasonably applying that rule, which in turn "translates to a

4    narrower range of decisions that are objectively unreasonable under AEDPA." *Cheney v.*

5    *Washington*, 614 F.3d 987, 995 (9th Cir. 2010).  When section 2254(d) applies, "the question is

6    not whether counsel's actions were reasonable. The question is whether there is any reasonable

7    argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

8    **b.    Procedural Default**

9        A federal court "will not review a question of federal law decided by a state court if the

10   decision of that court rests on a state law ground that is independent of the federal question and

11   adequate to support the judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991).  "The

12   doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal

13   claims because the prisoner had failed to meet a state procedural requirement.  In these cases, the

14   state judgment rests on independent and adequate state procedural grounds." *Id.* at 729-30.  A

15   "discretionary state procedural rule can serve as an adequate ground to bar federal habeas review."

16   *Beard v. Kindler*, 558 U.S. 53, 60 (2009).  A state procedural bar is "independent" if the state

17   court explicitly invokes the procedural rule as a separate basis for its decision and the application

18   of the state procedural rule does not depend on a consideration of federal law.  *Vang v. Nevada*,

19   329 F.3d 1069, 1074-75 (9th Cir. 2003).  An "adequate" state rule must be "firmly established and

20   regularly followed." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard*, 558 U.S. at 60).

21       In cases in which a state prisoner has defaulted his federal claims in state court pursuant to

22   an independent and adequate state procedural rule, federal habeas review of the claims is barred

23   unless the prisoner can either (1) demonstrate cause for the default and actual prejudice as a result

24   of the alleged violation of federal law, or (2) demonstrate that failure to consider the claims will

25   result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750.  The cause standard

26   requires the petitioner to show that "'some objective factor external to the defense impeded

27   counsel's efforts'" to raise the claim.  *See McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (citing

28   *Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  To demonstrate actual prejudice, the petitioner

United States District Court<br>Northern District of California

14

1    must show that the errors "worked to his *actual* and substantial disadvantage, infecting his entire

2    trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982)

3    (emphasis in original).  The miscarriage of justice exception provides that a federal court may still

4    hear the merits of procedurally defaulted claims if the petitioner can make a showing of actual

5    innocence.  *See McQuiggin v. Perkins*, 569 U.S. 383, 393–94 (2013).  "The miscarriage of justice

6    exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and

7    establishes that the court cannot have confidence in the contrary finding of guilt."  *See Johnson v.*

8    *Knowles*, 541 F.3d 933, 936–38 (9th Cir. 2008) (emphasis in original).  To demonstrate "actual

9    innocence," a petitioner must present new reliable evidence, such as exculpatory scientific

10   evidence, trustworthy eyewitness accounts, or critical physical evidence, that would create a

11   credible claim of actual innocence (i.e., that the petitioner is innocent of the charge for which he is

12   incarcerated, as opposed to legal innocence as a result of legal error).  *Schlup v. Delo*, 513 U.S.

13   298, 321, 324 (1995).  A petitioner may pass through the *Schlup* gateway by promulgating

14   evidence "that significantly undermines or impeaches the credibility of witnesses presented at

15   trial, if all the evidence, including new evidence, makes it 'more likely than not that no reasonable

16   juror would have found petitioner guilty beyond a reasonable doubt.'"  *Gandarela v. Johnson*, 286

17   F.3d 1080, 1086 (9th Cir. 2002) (quoting *Schlup*, 513 U.S. at 327).

18          Here, the state court denied this claim pursuant to *In re Dixon*, 41 Cal. 2d 756, 264 P.2d

19   513 (Cal. 1953).  The *Dixon* rule provides that to bring a claim in a state habeas corpus action a

20   petitioner must first, if possible, have pursued the claims on direct appeal from his or her

21   conviction unless the claim falls within certain exceptions.  *See Park v. California*, 202 F.3d 1146,

22   1151 (9th Cir. 2000).  The *Dixon* rule is both an adequate and independent state procedural rule.

23   *Johnson v. Lee*, 136 S. Ct. 1802, 1803-04 (2016).  When a state court denies a habeas petition on

24   *Dixon* grounds, federal habeas review is barred.  *See id.* at 1804 (noting that *Dixon* is a well-

25   established procedural bar that is adequate to bar federal habeas review).

26          Petitioner has not alleged, much less demonstrated, cause or actual prejudice to excuse the

27   procedural default.  Specifically, Petitioner has not alleged, much less demonstrated, that some

28   objective external factor impeded his efforts to raise these specific claims of ineffective assistance

of counsel, or that these alleged errors worked to his actual and substantial disadvantage.  Nor has Petitioner satisfied the miscarriage of justice exception.  Petitioner has not demonstrated "actual innocence," in that he has not presented new reliable evidence that has created a credible claim that he is innocent of the charge for which he was convicted.  Petitioner's actual innocence claim relies on security camera footage that he alleges would exonerate him.  This is an assertion, and not reliable evidence.  First, it is unlikely that this security camera footage exists as his wife testified that at trial that the security cameras were unplugged during the relevant time period and were not recording video.  RT 311-12.  Second, even if such footage existed, the exculpatory value of the footage is speculative since no one, including Petitioner, has seen the footage.  *Cf. James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").  To the extent that Petitioner is alleging actual innocence based on Sheperd and Vreonis, Jr.'s eyewitness accounts of the relevant events, Petitioner has not demonstrated that their accounts are either reliable or trustworthy.  As the state court pointed out, their accounts of the relevant events are inadmissible hearsay because they are being presented via Daphine's unsworn declaration and Daphine's credibility was challenged at trial by her 911 recording.  ECF No. 20-13 at 10-12.   The Court therefore cannot consider Petitioner's ineffective assistance of counsel claims because they are procedurally defaulted and Petitioner has not demonstrated cause and prejudice to excuse the default, or that the failure to consider these claims would result in a miscarriage of justice.

### d.    Merits

Even if the procedural default could be excused, the state court's denial of these ineffective assistance of counsel claims was neither an unreasonable determination of the facts as presented in the state court proceedings and was not contrary to, or an unreasonable determination of, clearly established Federal law.  The state court found the claim meritless because "Petitioner provide[d] no competent evidence showing the ways his trial counsel was allegedly ineffective, [and did not] show any evidence of prejudice."  ECF No. 20-13 at 12.  The Court addresses each IAC subclaim in turn to determine whether the state court's denial was reasonable.

Failure to conduct reasonable pretrial investigation.  Petitioner alleges that trial counsel

16

failed to conduct a reasonable pretrial investigation because he "failed to interview and subpoena witnesses to [the] alleged assault on [the] officer" and "did not hire ballistics or forensics to investigate scene of 'crime'." ECF No. 1 at 8.  Petitioner has not provided any evidence indicating that the un-interviewed witnesses (presumably Sheperd and Vrenois Jr.) and a ballistics or forensics expert would have provided favorable, much less exculpatory, testimony.  Petitioner does not specify what these witnesses or expert might have said that would have resulted in his acquittal at trial.  He says that Daphine can testify that Sheperd and Vrenois, Jr. stated that they saw Officer Kint try to kill Petitioner and fail to announce their presence but, as discussed in the state court opinion, this evidence is inadmissible hearsay.  Petitioner does not specify what the expert would testify to, or how having an expert examine the scene would affect the outcome of his trial.  As discussed below, trial counsel challenged Officer Kint's version of events by highlighting other items of evidence and inconsistencies in the evidence.  A defendant's mere speculation that a witness might have given helpful information if interviewed is not enough to establish ineffective assistance. *See Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  Applying the deference and presumptions required by the Supreme Court, the Court finds that there is a reasonable basis for the state court's determination that there was no competent evidence that counsel was ineffective for failing to interview Sheperd and Vrenois Jr.; for failing to subpoena Sheperd and Vrenois Jr. to testify at trial; and for failing to hire a ballistics or forensics expert to investigate the crime.

Failure to Present Favorable Medical Report.  Petitioner argues that trial counsel was ineffective for failing to present a medical report that stated that Petitioner was shot in his right side. ECF No. 1 at 8.  The medical report is cumulative of other evidence challenging Officer Kint's version of events which trial counsel did present at trial, such as where the bullets landed, photographs showing the doorstep and the various positions of each individual, and the testimony proffered by Petitioner and his wife. *See, e.g.,* RT 178-87, 493-95.  While failure to present probative, noncumulative evidence in support of a chosen defense strategy is deficient performance absent a reasonable tactical justification, *Alcala v. Woodford*, 334 F.3d 862, 870-71 (9th Cir. 2003) (finding deficient performance and prejudice where counsel failed to present most

1    probative evidence in support of alibi defense, including only evidence that established time and

2    date of alibi), effective assistance of counsel does not require counsel to present all favorable

3    evidence available to him or her, *see, e.g.*, *Babbitt v. Calderon*, 151 F.3d 1170, 1174 (9th Cir.

4    1998) (counsel's decision not to present cumulative lay testimony on a mental state defense

5    addressed by defense experts was not unreasonable).  Applying the doubly deferential standard of

6    review required by the Supreme Court, the Court finds that there is a reasonable basis for the state

7    court's determination that there was no competent evidence to support Petitioner's claim that trial

8    counsel was ineffective for failing to present the medical report.

9         Failure to File a Motion to Suppress.  Petitioner argues that counsel was ineffective for

10   failing to file a motion to suppress certain statements that he made to officers when he was in the

11   hospital.  However, these statements were not central to the question of Petitioner's guilt.

12   Petitioner's conviction turned on whether, as the police officers claim, he was brandishing a

13   weapon when he exited his home, knowing that he was facing a police officer, or, as he claims, he

14   had a gun down at his side when he exited his home, and he was unclear as to who was outside.

15   RT 493-503.  The prosecution relied on the contents of the 911 to bolster the credibility of the

16   officers' testimony and did not rely on the statements made by Petitioner while in the hospital.

17   Petitioner has not established that he was prejudiced by the admission of these statements.

18   Applying the doubly deferential standard of review required by the Supreme Court, the Court

19   finds that there is a reasonable basis for the state court's determination that there was no

20   competent evidence to support Petitioner's claim that trial counsel was ineffective for failing to

21   file a motion to suppress the statements he made following his surgery.

22        Failure to Present Testimony from Ballistics or Forensic Expert.  Petitioner argues that

23   counsel was ineffective to present testimony from a ballistic or forensics expert.  He argues that

24   expert testimony could have conclusively challenged Officer Kint's testimony regarding where

25   Kint was during the shooting and why Kint shot Petitioner.  This claim is speculative.  Petitioner

26   has not presented any evidence indicating a ballistic or forensics expert would testify favorably.

27   Speculation that an expert's testimony would have been helpful is not enough to establish

28   ineffective assistance.  *See Bragg*, 242 F.3d at 1087.  Applying the doubly deferential standard of

United States District Court
Northern District of California

18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

review required by the Supreme Court, the Court finds that there is a reasonable basis for the state court's determination that there was no competent evidence to support Petitioner's claim that trial counsel was ineffective for failing to present testimony from a ballistics or forensics expert.

Petitioner's ineffective assistance of counsel is procedurally defaulted and, in the alternative, fails on the merits.  Federal habeas relief is denied on this claim.

### 3.    Denial of Public Trial

Petitioner argues that he was denied his Sixth Amendment right to a public trial when the case was closed to the public; when Daphine was only allowed access at various stages of the trial during her testimony and was denied access during the prosecution's examination of witnesses; and when a member of Petitioner's church was questioned by the trial judge as to his identity and only allowed to stay after declaring that that he was an investigator in Contra Costa County.  ECF No. 1 at 9; ECF No. 20-15 at 23.   Respondents argue that this claim is procedurally defaulted and without merit.  The state superior court denied this claim as follows.

> As to Petitioner's claim that the public was prohibited from attending his trial, the only evidence he provides is his own sworn statement that a friend who attended the trial was questioned by the court before ultimately being allowed to stay in the courtroom. Petitioner's sworn statement about this issue does not constitute competent evidence of the purportedly illegal exclusion of the public from the jury trial; the evidence is inadmissible hearsay.  (Evidence Code § 1200(a).)
>
> Further, Petitioner indicates that Daphne Hendrix [sic], a witness in the case, was not permitted to be present in the courtroom while other witnesses were testifying.  Evidence Code § 777(a) permits the court to "exclude from the courtroom any witness not at the time under examination so that such witness cannot hear the testimony of other witnesses."  The prosecution moved in limine for a witness exclusion order under Evidence Code § 777.  Assuming, without deciding, that the trial court granted this in limine motion, or granted it in modified form, there would hardly have been anything unusual about such a ruling, much less anything unlawful.
>
> Petitioner has not established a prima facie case based on competent evidence that he was denied a public trial, and therefore, the petition would normally be denied on this ground.  However, the court is precluded from considering Petitioner's . . . claim that the public was unlawfully excluded from the trial because he could have presented these claims in his direct appeal, but failed to do so.
>
> . . .

> [A] review of the unpublished appellate opinion from August 2018 shows that the appellate court did not address a claim of unlawful exclusion of the public from Petitioner's trial. The court draws the inference that this claim was not raised as part of Petitioner's direct appeal.
>
> It is well settled that petitions for habeas corpus are not permitted where the issues could have been raised on appeal, or had been raised and were denied. (*In re Harris* (1993) 5 Ca1.4th 813, 829; *In re Waltreus* (1965) 62 Cal.2d 218, 225; *In re Dixon* (1953) 41 Cal.2d 756, 759.) "Habeas corpus cannot serve as a substitute for an appeal, and, in the absence of special circumstances constituting an excuse for failure to employ that remedy, the writ will not lie where the claimed errors *could have been, but were not*, raised upon a timely appeal from a judgment." (*In re Harris*, *supra*, 5 Cal.4th at p. 829 (quoting *In re Dixon*, *supra*, 41 Cal.2d at p. 759) (emphasis in original).) However, petitioners may "raise in a petition for writ of habeas corpus an issue previously rejected on appeal where there has been a change of law affecting the petitioner." (*Id*. at p. 841.)

ECF No. 20-13 at 11-13.

As discussed above, the *Dixon* rule is both an adequate and independent state procedural rule, barring federal habeas review, *Johnson*, 136 S. Ct. at 1803-04 (2016), unless Petitioner can demonstrate cause and actual prejudice, or that the failure to hear these claims will result in a fundamental miscarriage of justice, *Coleman*, 501 U.S. at 7. Petitioner has not alleged, much less demonstrated, cause or actual prejudice to excuse the procedural default. Nor has he demonstrated "actual innocence," in that he has not presented new reliable evidence that has created a credible claim that he is innocent of the charge for which he was convicted. Accordingly, the Court cannot consider this procedurally defaulted claim on the merits.

Even if the procedural default could be excused, there was a reasonable basis for the state court's determination that there was no competent evidence supporting this habeas claim. The record supports the state court's finding that the only person denied public access to the trial was Petitioner's wife, and that the state moved to exclude witnesses during the trial pursuant to evidentiary rules intended to insure a fair trial. The state court's denial of this claim was not an unreasonable determination of the facts presented in the state court proceeding. Nor was the state court's denial of this claim contrary to, or an unreasonable determination of, clearly established Federal law. The federal cases cited by Petitioner, *Waller v. Georgia*, 467 U.S. 39 (1984), and *Presley v. Georgia*, 558 U.S. 209 (2010), addressed situations where the court proceedings were

20

closed to the public, which was not the case here.  Habeas relief is denied on this claim.

**C.      Certificate of Appealability**

The federal rules governing habeas cases brought by state prisoners require a district court that issues an order denying a habeas petition to either grant or deny therein a certificate of appealability.  *See* Rules Governing § 2254 Case, Rule 11(a).

A judge shall grant a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and the certificate must indicate which issues satisfy this standard.  *Id.* § 2253(c)(3).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Here, Petitioner has not made such a showing, and, accordingly, a certificate of appealability will be denied.

**CONCLUSION**

For the reasons stated above, the petition for a writ of habeas corpus is DENIED, and a certificate of appealability is DENIED.

The Clerk shall enter judgment in favor of Respondents and close the file.

**IT IS SO ORDERED.**

Dated:  December 28, 2021

_____
JON S. TIGAR
United States District Judge